

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2005

# Kum v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1578

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation
"Kum v. Atty Gen USA" (2005). *2005 Decisions.* Paper 306.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/306

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 05-1578
_____

BAME KUM,

Petitioner

v.

ALBERTO R. GONZALES, ATTORNEY
GENERAL OF THE UNITED STATES,

Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A96-248-823)

_____

Submitted Under Third Circuit LAR 34.1(a)
October 14, 2005

Before: VAN ANTWERPEN, GREENBERG AND NYGAARD, <u>CIRCUIT</u> <u>JUDGES</u>

(Filed October 31, 2005)
_____

OPINION
_____

PER CURIAM

Petitioner Bame Nelson Kum, a native and citizen of Cameroon, is removable

under Immigration and Nationality Act ("INA") § 237(a)(1)(C)(i), 8 U.S.C. §

1227(a)(1)(C)(i), for failing to maintain conditional non-immigrant status.  Kum applied for asylum, withholding of removal, and for protection under the Convention Against Torture, claiming that he had suffered persecution under the regime of President Paul Biya, a regime that persecutes opposition political parties that advocate secession.  His applications for these three forms of relief were denied by an Immigration Judge.  The Board of Immigration Appeals affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), and this petition for review followed.[1]

We set forth the jurisdictional basis for review of removal orders in Chen v. Ashcroft, 376 F.3d 215 (3d Cir.2004), and in the same opinion set forth our standard of review in such cases.  Here, it is sufficient to note that our jurisdiction arises under section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1), and that we review adverse credibility determinations for substantial evidence.  Chen, 376 F.3d at 222 (citation omitted).  Under this deferential standard of review, we must uphold the credibility determination of the BIA or IJ unless "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  Put another way, we are required to sustain an adverse credibility determination unless no reasonable person would have found the applicant incredible.  Chen, 376 F.3d at 222 (citations omitted).

After our review of the matter and exercising the appropriate standard of review, we find no basis to grant Kum relief.  Accordingly, we will deny the petition for review.

---

[1]  A motions panel of this Court granted Kum a stay of removal pending the outcome of his petition for review.

The Immigration Judge found that Kum was not a credible asylum applicant. Where the BIA issues a summary affirmance under its streamlining regulations, we review the IJ's decision as if it were the decision of the BIA. See Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). Her adverse credibility determination was based on Kum's testimony at his removal hearing concerning why he went back to Cameroon in 2001, and what happened during his visit. The IJ first commented on Kum's superior intelligence and education, which she believed contrasted sharply with his vague testimony. She then recounted the significant events. Kum came to the United States in 2000 on a student visa. He returned to Cameroon in October 2001 for about three months. Importantly, Kum was not arrested or harmed during the months he was in Cameroon.

While he was in school in Iowa, according to his own testimony, Kum paid little attention to what was happening in Cameroon. Because he was unconcerned about events in Cameroon, the IJ did not believe his testimony that he returned to move his family to a new location because he feared for their safety. In addition, there was nothing in his asylum application about fearing for his family. The IJ also did not believe his testimony that he returned to deal with his businesses and handle matters that his wife had not been able to handle successfully in his absence. This testimony appeared to contradict his asylum affidavit, which referred to two businesses that were liquidated in 1999. The IJ also was bothered by Kum's testimony that he had been blacklisted by the Cameroon

3

government, something he most certainly should have mentioned in his asylum application.

Kum has argued in his brief that his evidence was not contradictory, that the IJ did not give him a chance to say what he wanted to say at his removal hearing, and that she focused exclusively on recent events in judging his credibility. Accordingly, we have carefully reviewed his asylum application and supporting affidavit. According to Kum's affidavit, A.R. 97-106,[2] after he received his Bachelor's Degree in 1996 in banking and finance, he became active in politics, joining the Southern Cameroon National Council and the Social Democratic Front, opposition parties organized by Anglophone, or English-speaking, Cameroonians.

In July 1997, he ran an agency devoted to alleviating poverty. The position required him to seek cooperation with the French-speaking government of Cameroon, but the ruling party wanted him to join their party. He refused. In February 1999, he went to The Hague to attend a conference on population and development. Thereafter, the government orchestrated several attempts on his life. Even after he resigned his position with the development agency in 1999, members of the government continued to actively insist that he join their political party. Because he refused, his business was overtaxed, vandalized, and eventually destroyed altogether.

---

[2] "A.R." refers to the administrative record.

In addition, Kum's friend was killed in 1990 by government troops. Kum himself received a beating in 1992 from government troops because he is an Anglophone, and received another similar beating in 1994. He suffered another beating in May 1997, which required stitches. In September 1999, he was arrested on suspicion of attending a meeting on secession, and beaten severely on his chest and sprayed with a high pressure hose. Kum provided corroborating evidence of his 1999 beating in the form of an affidavit from a traditional doctor, attesting to severe chest and rib injuries. A.R. 306. An affidavit from a tribal king offered at the hearing as Exhibit 5, indicated that Kum was held in detention at the Biyem-Assi police station in 1998, and he showed signs of abuse and neglect. A.R. 55-56, 271-72.

In further support of Kum's asylum application, the State Department's country report for 2001 confirms that the ruling party, the Cameroon People's Democratic Movement, limits political choice. The 1997 elections were considered to be flawed, and the government's human rights record is poor. A.R. 278-304.

Notwithstanding this evidence, we conclude that the record substantially supports that Kum was unconcerned about his and his wife's safety while studying in the United States for his graduate degree, and that he did not fear returning to Cameroon. The IJ reasonably concluded that Kum's decision to return to Cameroon undermined the credibility of his claim that he had a well-founded fear based on past persecution. Kum's testimony that he discovered that he had been blacklisted by the government is potentially

5

powerful evidence, because, if traveling, he could be stopped, arrested and detained without any formal legal proceedings. Again, however, the IJ reasonably concluded that the assertion was weakened by the fact that he did not include it in the asylum application or in the otherwise thorough ten-page affidavit in support.

Kum's assertion that he only learned about the blacklist after he returned to Cameroon was not credible. Moreover, he admitted that he had not been stopped, arrested or detained between the time he arrived back in Cameroon in October 2001 and the time he left to return to the United States in January 2002. The record also shows that he could have left Cameroon in November 2001 when his F-1 visa was issued, but he remained until January 2002 despite his alleged fear that he would be persecuted. In addition, the IJ made a valid point in noting that the troubling events of 1998 – Kum's arrest and detention at the Biyem-Assi police station – were not included in the asylum application.

We thus cannot say that, on the record as a whole, the evidence compels a conclusion contrary to that of the IJ. 8 U.S.C. § 1252(b)(4)(B). Certainly significant evidence of past persecution can be found in the administrative record, in particular, in Kum's asylum application and affidavit in support, and his corroborating evidence. The IJ, however, was not unmindful of the amount and significance of the evidence of past persecution, and she seemed genuinely to find it believable, standing alone. She simply concluded, not unreasonably, that Kum's recitation of more recent events, and the logical

6

inferences to be drawn from his actual experience in Cameroon, tended to undermine what otherwise might have been credible evidence of past persecution. We cannot say that no reasonable person would have drawn this conclusion after hearing Kum's testimony, Chen, 376 F.3d at 222, and we thus must uphold the IJ's adverse credibility determination.

Because Kum failed to meet his burden on the asylum claim, he necessarily failed to meet his more stringent burden on the request for withholding of removal. We find no error either in the IJ's conclusion that Kum did not establish that it was more likely than not that he would actually be tortured if he returned to Cameroon.

We will deny the petition for review.